FROEDTERT GRAIN & MALTING COMPANY, Appellant, vs. PETER P. WOBORIL, INC., Defendant: SALTZSTEIN, Respondent.

*December 2—December 30, 1953.*

458

For the appellant there were briefs by *Fairchild, Foley & Sammond* and *Joseph E. Rapkin, Marvin E. Klitsner,* and *Harrold J. McComas,* all of Milwaukee, and oral argument by *Mr. Klitsner.*

For the respondent there was a brief and oral argument by *Howard G. Brown* of Milwaukee.

BROWN, J. Because of the decision we have reached upon the appeal from the order made by Judge KLECZKA, it is unnecessary to decide the questions raised by the appeal from the order of Judge SWIETLIK.

The petition of the corporation that the court order a substitution of attorneys in the Woboril case upon proper terms recited that Mr. Saltzstein claimed that fees were due him for work done in other matters and suggested that the

issues in those matters could be disposed of at the same time as Saltzstein's Woboril fees. Mr. Saltzstein's counteraffidavit opposed the inclusion of such other matters and he insisted vigorously upon the hearing that the Federal Trade and Froemco matters be excluded from consideration in this proceeding. The record shows that the court agreed with him and the issue actually tried concerned only the compensation Mr. Saltzstein should have for services rendered *in re Woboril* upon his replacement by other attorneys in that action. He claimed he was entitled to $504.20. The order, entered six and one-half years after the hearing, by title referred only to the suit of the corporation against Woboril and granted the substitution upon payment to Saltzstein of attorney's fees of $3,000. It does not refer to any matters other than the Woboril action, though the court's memorandum makes clear that this sum was to compensate Mr. Saltzstein for his services in the other two matters. No substitution in such cases had been asked nor does the order direct it.

Respondent Saltzstein urges now that the issues were broadened on the hearing and all disputes over fees in all pending cases were litigated. The record does not support the argument and he concedes that the bill of exceptions, certified by the trial judge, contains no reference to such broadening. He contends, however, that the trial judge as well as himself so remember it. We are not surprised that appellant's recollection is just the other way. After so long an interval between hearing and decision it is not to be expected that interested parties would have the same memories. We consider that we are confined to the record and must take it as we find it. That does not enlarge the issues to include anything except a substitution of attorneys in the Woboril action and the appropriate fee to be paid Mr. Saltzstein in that case before he should be required to surrender its files to the substituted attorneys. It is evident, then, that

the order in so far as it allows a fee of $3,000 for services in three cases cannot stand. Nor, of course, does the evidence support such a sum in the Woboril matter alone.

It is due the distinguished trial judge to say that during the long time this matter was under advisement he was in poor health, directly attributable to overwork, so serious as finally to cause him to retire from judicial labors. Because of this retirement we have an unusual situation. Ordinarily after pointing out errors which we consider have been committed and suggesting corrections, we would remand the record for further proceedings before the same judge, but that judge is not now in office. Such proceedings before his successor would require his original study of the record which seems to us an unnecessary burden to impose on him since we have already been compelled to study it and feel as competent to handle here the questions of law and fact which the appeal presents as any trial judge would be who, like ourselves, did not have the advantage of hearing and seeing the witnesses.

The first question deals with an interpretation of the retainer, particularly, whether or not the annual payment of $5,000 is compensation for services rendered in matters in which litigation has been commenced and such services consist of preparation or negotiation and are not performed in the courtroom. No absolute rule of law can be relied on to determine this question. We are confronted by a contract on which the parties disagree, and the "court appearances" which the stipulated fee does not pay for may be interpreted to mean either (1) only those when counsel is physically present in court, or (2) services in all matters which have got into court and the client "appears by his attorney" or the attorney "appears for the client," although such appearance may be documentary, as by complaint or answer or retainer served and filed. The intent of the parties must govern and the problem of the court is to find that intent if

the parties later disagree concerning it. We observe that in a litigated matter which is referred to in the testimony as the Adams case Saltzstein rendered a bill very similar to the one in dispute here, setting forth many services rendered in the office rather than in court. No specific charges were set down for individual services nor was a total computed. Mr. Saltzstein and Mr. Froedtert conferred about the bill and Mr. Froedtert, president of the corporation, set down a total of $2,500 at the foot of the bill, which was satisfactory to Mr. Saltzstein, and the corporation paid him that amount. Mr. Saltzstein testified that he considered the bill was thus honored and paid. Mr. Froedtert testified that he thought the retainer fee had paid the bill but the work was well done and he felt like making Saltzstein a present. The bill was paid with company money and we find no corporate action authorizing Mr. Froedtert to make gifts on its behalf. We must hold that the Adams bill was paid, rather than that there was a gift which left the bill undisposed of. We consider this incident was an interpretation by the parties themselves showing their intent that "court appearances" include services rendered in the office, or otherwise out of the courtroom, in matters where the corporation has appeared by counsel in controversies pending in court.

The learned trial court was correct, therefore, in determining that Mr. Saltzstein's services, as itemized in the bill he submitted to the corporation, had not been paid for by the sums he received on the retainer.

The corporation submits that during the time that the trial court had the appellant's petition under advisement the corporation settled its dispute with Woboril and informed the trial court of this fact. The trial judge's memorandum shows he was so informed. Appellant argues from this that the controversy had become moot, wherefore no order should have been entered in the circuit court and we ought to withhold any decision now. The argument seems to be based on

the proposition that, the case being settled, appellant is under no compulsion to pay anything to Mr. Saltzstein as terms for acquiring new, unnecessary counsel, in a matter which no longer interests appellant. We cannot agree that the settlement of the parent dispute makes moot the present controversy. For one thing, the Woboril action has not been dismissed and the existence of counsel for the corporation, if only to receive notice of a motion to dismiss, if not indispensable, is highly desirable for a disposition by the court of that lawsuit. More important is the view we take of appellant's procedure in the substitution matter. It applied to the court to set terms on which new counsel should be substituted for old. We cannot consider this to be a proceeding whereby the client may find out what it will cost to get another attorney, with an option to drop the matter and keep the lawyer it already has if the replacement price seems too high. We regard the application as a consent by the petitioner to be bound by the court's determination (within the limits of judicial discretion and subject to appeal) and to pay such amount as the court may order, in like manner as the unwanted attorney must surrender the client's papers and get out of the case upon receiving payment so ordered. When the client has applied to the court for such relief we conclude that it cannot, without consent of the attorney, make moot this particular controversy by a settlement of the principal action or, for other unilateral reasons, abandon, to the attorney's prejudice, its effort to procure a substitution. The court may still proceed to a determination of the terms of substitution and its order, within the limits aforesaid, binds the client to compliance.

The real controversy here concerned the question of whether the services, for which Mr. Saltzstein billed the corporation, were paid for by the compensation he received under the retainer and there was not much contest over the value of the services if the retainer payments were not appli-

cable to them. We have examined the record bearing on the services performed and have concluded that, under the conditions of the action in which they were rendered, $500 for services, plus $4.20 disbursements, is reasonable compensation and that the substitution of attorneys should have been ordered on the payment of that amount by the corporation to Mr. Saltzstein.

*By the Court.*—Order dated December 31, 1952, modified to provide payment by appellant to respondent of $504.20 rather than $3,000, and, as so modified, affirmed. Record remanded for further proceedings consistent with this opinion. No costs to be taxed by either party. Respondent is to pay the clerk's fees.