## WISTRAND *v.* BESE

### (GENESEE MERCHANTS BANK & TRUST COMPANY *v.* SEFA)

1. ATTORNEY AND CLIENT—CONTRACTS—WRITTEN FEE AGREEMENT—CONSTRUCTION.

    Disputes between attorney and client regarding the amount of compensation due under a written fee agreement are resolved by application of the general rules of contract construction.

2. CONTRACTS—CONSTRUCTION—INTENT OF PARTIES.

    Application of the general rules of contract construction require that the courts discover the intent of the parties where they later disagree on it.

REFERENCES FOR POINTS IN HEADNOTES

[1] 7 Am Jur 2d, Attorneys at Law § 211.
[2, 3] 17 Am Jur 2d, Contracts §§ 1, 240–242, 244–249, 252.
[4] 17 Am Jur 2d, Contracts § 77.
[5, 6] 7 Am Jur 2d, Attorneys at Law §§ 266–269.

3. CONTRACTS—CONSTRUCTION—INTENT OF PARTIES—QUESTION OF FACT.

    Determination of the intent of the parties to a contract is a question of fact to be determined by the trier of fact.

4. CONTRACTS—AMBIGUITY—PAROL EVIDENCE—ADMISSIBILITY.

    General rules of contract construction permit the court to use all possible aids in construction, the parol evidence rule notwithstanding; hence, where the court is aware of possible doubt, ambiguity and uncertainty in the meaning and application of agreed language, it may admit testimony as to antecedent agreements, communications and other factors which may help decide the issue.

5. ATTORNEY AND CLIENT—CONTRACTS—WRITTEN RETAINER AGREEMENT—AMBIGUITY—CLIENT'S TESTIMONY—ADMISSIBILITY.

    Evidence of the surrounding facts and circumstances or of parties' statements contemporaneous with the making of an agreement is admissible for purposes of determining the parties' intent where the agreed written language proves ambiguous; hence, where a written retainer agreement between plaintiff attorney and defendant clients provided that plaintiff would receive 10% of a release of mortgages against defendant's property but failed to mention whether the percentage was applicable to real property or to personal property, it is ambiguous in that respect, and defendant's testimony as to conversation with plaintiff at the time the retainer agreement was negotiated in which the mortgage provision was discussed was admissible for purposes of interpretation of the agreement.

6. ATTORNEY AND CLIENT—CONTRACTS—WRITTEN RETAINER AGREEMENT—AMBIGUITY—FEES—EVIDENCE.

    Testimony by defendant client that he and plaintiff attorney had orally discussed a provision of a written retainer agreement giving the attorney 10% of mortgages released in a lawsuit during negotiation of the agreement and that the mortgage agreement was discussed solely with respect to real property, the omission of any reference to chattel mortgages from the written agreement, and the testimony of a disinterested lawyer who shared plaintiff's offices which tended to show that both parties were concerned strictly with real property mortgages, is sufficient to support a finding that both parties understood the mortgage provision as being solely applicable to real property.

Appeal from Genesee, John W. Baker, J.  Submitted Division 2 March 3, 1970, at Lansing.  (Docket No. 7,331.)   Decided April 28, 1970.   Leave to appeal denied August 12, 1970.   383 Mich 816.

Complaint by D. Bruce Wistrand against Joe Bese and Erma Bese for a determination of the amount due under a written retainer agreement for services rendered by plaintiff's representation of defendants in an action brought against them by Genesee Merchants Bank & Trust Company.  Judgment for defendants restricting the computation of the fee to real property.  Plaintiff appeals.  Affirmed.

*D. Bruce Wistrand, in propria persona,* and *Ransom, Ransom, Ransom & Henneke,* for plaintiff.

*Carl L. Bekofske,* for defendants.

Before:  J. H. Gillis, P. J., and Danhof and O'Hara,* JJ.

J. H. Gillis, P. J.   This appeal involves a dispute over attorney fees claimed to be due under a written retainer agreement.  The agreement was executed between the parties to this appeal on January 20, 1965. Thereafter, attorney Wistrand, appellant herein, represented appellees Joe and Erma Bese in litigation brought against them by the Genesee Merchants Bank & Trust Company.  In that litigation, appellees were sued by the bank individually and as partners, together with Floyd and Nasib Sefa, in several Michigan partnerships.   The subject matter of the Genesee suit was an alleged indebtedness owed the

_____
* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

bank by the Big Star Grocery and Packing Company, one of the partnerships, on a note for $270,000. This note was secured by certain encumbrances and mortgages on the property of the partners, including that of Joe and Erma Bese.

At the conclusion of trial, the jury found there was $161,863.57 due the bank in principal and interest from the several partners. However, the jury awarded the partners $250,000 in damages on their counterclaim against the bank. The trial court then ordered judgment in the partners' favor in the amount of $88,136.43, together with interest of $4,039.67. As a result of the lawsuit, discharges were obtained on various chattel and real property mortgages held by the bank to secure the partners' indebtedness, including the discharge of a $17,500 real property mortgage held on property owned by Joe and Erma Bese.

Attorney Wistrand then petitioned the court for allowance of attorney's fees in accordance with his agreement with the Beses. That agreement provided in part:

"2nd parties [Beses] agree to pay 1st party [Wistrand] for said services  *  *  *  $3,000  *  *  *, *plus 1st party is to receive 10% of any partial or full release of mortgages held by said bank on 2nd parties' property* and 1st party is to receive 50% of any money damages collected in said suit." (Emphasis supplied.)

At the hearing on the petition, attorney Wistrand claimed that he was entitled to 10% of the release obtained on the $17,500 real property mortgage, together with 10% of the discharge of chattel mortgages held against equipment contained in the Big Star Packing Company's plant in the amount of $80,000. It was Joe Bese's contention, however, that under the agreement attorney Wistrand was entitled

to receive only 10% of the $17,500 real property mortgage discharged as a result of the suit, since that mortgage was the only one on which his liability was personal, not partnership. The trial court, after hearing the testimony of the parties, concluded that the fee shouldd be fixed at $19,632.78.** This amount included an allowance of 10% of $23,751—the $17,-500 real property mortgage discharged, plus interest accrued thereon. No allowance was made, however, for the release of the chattel mortgages.

Attorney Wistrand appeals, claiming that the trial court erred in limiting his fee under the mortgage provision of the retainer agreement to 10% of the real property mortgage discharged.

In resolving disputes between attorney and client regarding the amount of compensation due under a written fee agreement, courts apply general rules of contract construction. 7 CJS, Attorney and Client, § 182, p 1054; 3 MLP, Attorneys and Counselors, § 42, p 272. One such rule is that "the intent of the parties must govern and the problem of the court is to find that intent if the parties later disagree concerning it." *Froedtert Grain & Malting Company, Inc.* v. *Peter P. Woboril, Inc.* (1953), 265 Wis 456, 461, 462 (61 NW2d 855, 858; 43 ALR2d 671, 676). *Cf. Carter* v. *Marvel Carburetor Co.* (1934), 269 Mich 21, 25; *Maiullo* v. *Genematas* (1969), 16 Mich App 231, 233. And the question of the intent of the parties is one of fact to be determined by the trier. See

---

** "Mr. Wistrand should have a fee in this case based on the written contract as follows:

$3,000.00
15,362.68  (½ of 30, 725.36)
 2,375.10  (10% of 23, 751.00)
20,737.78
less     1,105.00  (amt. pd. on $3,000 item)
     $19,632.78 Balance of fee due Mr. Wistrand."

Opinion of the trial court. The trial court computed the 50% recovery of damages based on the Bese ⅓ partnership interest in the total damages recovered from the bank.

*Behr* v. *Baker* (1931), 255 Mich 607, 611; Annotation, "Construction and Operation of Attorney's General or Periodic Retainer Fee or Salary Contract", 43 ALR2d 677, 679.

In the present case, the language of the mortgage provision of the retainer agreement does not clearly disclose the intention of the parties. The provision refers to "mortgages held  *  *  *  on [Beses'] property"; however, no mention is made of the type of property, real or personal, within the contemplation of the parties. Whether attorney Wistrand was to be paid for the release of mortgages held against the *personal* property of Joe Bese is not evident from the agreed language. We think the mortgage provision of the agreement is ambiguous and, in this situation, a second rule of construction is applicable.

It is generally recognized that:

"In event of ambiguity in an instrument we make use of all possible aids in construction, the parol evidence rule to the contrary notwithstanding. 3 Corbin, Contracts, § 579, p 250, states the principle with clarity:

" 'As long as the court is aware that there may be doubt and ambiguity and uncertainty in the meaning and application of agreed language, it will welcome testimony as to antecedent agreements, communications, and other factors that may help decide the issue.' " *In re Traub Estate* (1958), 354 Mich 263, 280.

Accord, *Carter* v. *Marvel Carburetor Co., supra,* at 25; 7 CJS, § 182, pp 1054, 1055. In determining the intent of the parties where the agreed language proves ambiguous, surrounding facts and circumstances may be considered for the purpose of interpretation, and statements of the parties contemporaneous with the making of the agreement are admissible as evidence. 3 Corbin, Contracts, § 543, p 130. Thus, we agree with the circuit court's admis-

sion of the testimony of Joe Bese pertaining to the mortgage provision of the retainer agreement, notwithstanding attorney Wistrand's objection at trial. Testimony as to prior negotiations was admissible. *Roy Annett, Inc.* v. *Killin* (1961), 365 Mich 389.

At the hearing on attorney Wistrand's petition for fees, Joe Bese testified:

"*A.* So, in dealing there when we come to settle the terms of how the percentages was to be collected I says to him, I says 'If we clear everything, the Sefas and the partnership and everything completely, I'll agree to give you 10 percent of the 17,500'; nothing else is talked about in there.

"*Q.* Well, did Mr. Wistrand acknowledge your remarks?

"*A.* Just a minute. Just a minute. And we— he says 'If you get your slaughterhouse back free and clear would be [*sic*] satisfied?' I says 'I'd be satisfied if we can't get anything else.'

\*     \*     \*

"*Q.* And this discussion also took place at the time the retainer agreement was drawn up?

"*A.* That's right.

"*Q.* When you were discussing the retainer agreement did you talk about mortgages?

"*A.* We didn't talk about anything else; just the $17,500.

\*     \*     \*

"*Q.* Then, did the conversations at the time the retainer was drawn up, were they directed towards the one mortgage there?

"*A.* Just the one mortgage is all. Nothing else.

"*Q.* Was there any mention at all of the chattel mortgages, or mortgages other than the real estate mortgage?

"*A.* No.

"*Q.* In the retainer agreement     \*     \*     \*     you agreed to pay ten percent of mortgages released?

"*A.* Ten percent of $17,500; around there."

The clear impact of this testimony is that both parties understood the mortgage provision to include only the $17,500 property mortgage held against the Beses' slaughterhouse. Moreover, the disinterested testimony of Ivan Crawford, an attorney who shared an office with appellant Wistrand at the time the retainer was negotiated, tended to show that both parties to the agreement were concerned solely with the $17,500 real property mortgage.

On the evidence presented, the trial court could properly find as a fact that the parties to the agreement intended the mortgage provision to include only the $17,500 real property mortgage. Moreover, we cannot say on this record that the trial judge's finding is clearly erroneous. GCR 1963, 517.1. The judgment of the trial court is affirmed. Costs to appellees.

All concurred.