Estill COMBS, Plaintiff–Appellant,

v.

RETIREMENT PLAN FOR HOURLY EMPLOYEES OF RAG AMERICAN COAL COMPANY–LOST MOUNTAIN, Defendant–Appellee.

No. 00–6764.

United States Court of Appeals, Sixth Circuit.

Aug. 12, 2002.

Before MARTIN, Chief Circuit Judge; SILER and BATCHELDER, Circuit Judges.

SILER, Circuit Judge.

Plaintiff Estill Combs appeals the district court's judgment upholding the denial of disability retirement benefits and its order denying his motion pursuant to Fed. R.Civ.P. 59(e) to alter or amend judgment. We AFFIRM.

## I.

Combs, a former employee of a subsidiary of Cyprus Amax Minerals Company, was a participant in the "Retirement Plan for Hourly Employees of Cyprus Amax Coal Company–Lost Mountain" ("Plan").[1] Combs claimed disability retirement benefits under Schedule Nine of the Plan, which states:

*Eligibility for Disability Retirement.* A Participant who Terminates Employment because of total disability as a result of a mine accident occurring on or after May 28, 1994, shall be eligible for a disability retirement benefit. A Participant shall be considered to be totally disabled only if by reason of such mine accident the Participant is subsequently determined to be eligible for Social Security Disability Insurance Benefits under Title II of the Social Security Act or its successor.

On February 14, 1996, Combs injured his right hand, left shoulder, and left knee in a mine accident. As a result of his injuries from the accident, Combs did not return to work and subsequently underwent knee and shoulder surgery.

On May 6, 1996, Combs applied for Social Security Disability Insurance ("SSDI") benefits citing his shoulder and knee injuries sustained in the February 1996 accident as his disabling condition. The Social Security Administration ("SSA") denied Combs's claim for benefits because his condition was expected to continue to improve and not last for twelve full months. Combs requested reconsideration, and the SSA upheld its initial denial. Combs then requested a hearing before an administrative law judge ("ALJ") and submitted documentation from his treating physician and surgeon. After considering the additional medical evidence, the ALJ found that Combs was entitled to SSDI benefits based on four impairments: (1) internal derangement of the left knee; (2) osteoarthritis; (3) left shoulder tendonitis; and (4) degenerative disc disease.

On February 26, 1997, Combs applied for disability retirement benefits under the Plan, listing the nature and cause of his disability as "surgery on knee and shoulder with complications[;] pain in back with complications," with a date of onset of February 14, 1996. By letter dated July 21, 1997, the Plan denied Combs's application for disability retirement benefits, reasoning that the SSA awarded benefits "mainly based upon factors not resulting from the mine accident." The Plan noted that the SSA initially denied his claim for benefits because his shoulder and knee injuries sustained in the February 1996 mine accident were expected to improve and not last a full twelve months. When his claim was reviewed by the ALJ, Combs submitted additional information concerning chronic neck pain and chronic low back pain with associated degenerative joint disease, as well as anxiety and depression. The Plan concluded that "[s]ince your accident disability was previously determined to be one that could improve, it appears that the primary factors considered in your approval were degenerative disk disease and osteoarthritis."

Combs appealed the initial denial of his application for benefits to the Cyprus Amax Minerals Company Benefits Committee ("Committee"). On March 20, 1998, the Committee again denied Combs's claim for disability retirement benefits, determining that Combs's injuries sustained in the mine accident were not the sole reason for the SSDI benefits award and that the SSA awarded benefits only after it consid-

---

1. Due to corporate changes, the Plan is now known as the "Retirement Plan for Hourly Employees of RAG American Coal Company–Lost Mountain."

ered other factors, including degenerative disc disease, osteoarthritis, and limited education, that were not caused by the mine accident.

Combs requested review of the denial of his application for benefits. In November 1998, the Committee affirmed the denial of Combs's claim for benefits under the Plan, concluding that the SSDI award was not based solely on Combs's shoulder and knee injuries sustained in the mine accident but was based on additional factors not resulting from the mine accident, such as osteoarthritis, tendonitis, and degenerative disc disease as well as Combs's limited education.

Combs filed this action against the Plan for wrongful denial of disability retirement benefits pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). The district court entered judgment upholding the denial of benefits and dismissing Combs's claims. Combs then filed a motion to alter or amend judgment pursuant to Fed.R.Civ.P. 59(e), which the district court denied.

## II.

### A. Denial of Benefits

#### 1. Standard of Review

■ The district court reviewed the Committee's denial of benefits under the arbitrary and capricious standard. We review *de novo* the district court's determination regarding the proper standard to apply in its review of the denial of benefits. *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 380 (6th Cir.1996).

Under ERISA, we review *de novo* a plan administrator's denial of benefits, "unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Wilkins v. Baptist*

*Healthcare Sys., Inc.,* 150 F.3d 609, 613 (6th Cir.1998). When an ERISA plan gives the plan administrator such discretionary authority, we review the administrator's decision under the arbitrary and capricious standard. *Wendy's Int'l, Inc. v. Karsko,* 94 F.3d 1010, 1012 (6th Cir.1996).

The Plan here names the Committee as the fiduciary and administrator and provides:

9.3 *Duties and Powers of Committee.*

(a) *General.* The Committee will decide all questions arising in the administration, interpretation, and application of the Plan, including all questions relating to eligibility and distributions, except as may be reserved under this Plan to the Company. The decisions of the Committee will be final and will be conclusive and binding on all parties.

The Plan clearly grants the Committee broad discretionary authority to determine eligibility for benefits and to interpret the terms of the Plan; therefore, the arbitrary and capricious standard of review applies. *See Davis v. Kentucky Fin. Cos. Ret. Plan,* 887 F.2d 689, 694 (6th Cir.1989) (holding that the following language triggered the arbitrary and capricious standard: "... The Retirement Committee shall interpret the Plan and shall determine all questions arising in the administration, interpretation and application of the Plan. All such determinations shall be final, conclusive and binding except to the extent that they are appealed under the ... claim procedure").

#### 2. Analysis

■ Under the arbitrary and capricious standard, "the least demanding form of judicial review of administrative action," *id.* at 693, we must ask whether the plan administrator's decision to deny benefits is "rational in light of the plan's provisions,"

*Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir.1991). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis*, 887 F.2d at 693. If the plan administrator's interpretation of the plan's language is reasonable, then its interpretation must be upheld. *Wendy's Int'l*, 94 F.3d at 1012.

Combs contends that the Committee misinterpreted the Plan to require that the SSDI award result solely from the mine accident. The Plan states that a "Participant shall be considered to be totally disabled only if by reason of such mine accident the Participant is subsequently determined to be eligible for Social Security Disability Insurance Benefits." The Committee's interpretation of the Plan to require that the participant be awarded SSDI benefits because of a mine accident to be eligible for disability retirement benefits is rational in light of the Plan's language.

Combs also asserts that the Committee erroneously interpreted the reference to May 28, 1994, the effective date of the Plan's amendments, as the addition of a pre-existing condition clause. The Plan states: "A Participant who Terminates Employment because of total disability as a result of a mine accident occurring on or after May 28, 1994, shall be eligible for a disability retirement benefit." This language can only be read to exclude injuries sustained in mine accidents prior to May 28, 1994.

According to Combs, because the ALJ's review is *de novo*, the Committee should have considered only the ALJ's award and should not have read the SSA's initial determination and reconsideration. The ALJ's award was based on the submission of evidence not considered in the two prior denials. Consideration of the evidence of-fered at each step of the SSDI claims process and all three decisions presents a more complete picture of the SSA's decision process and the basis for the ALJ's award.

Finally, Combs asserts that the Committee selectively considered the SSA's exhibits. As long as there was evidence supporting the Committee's decision, the presence of evidence supporting a contrary conclusion does not render the Committee's decision arbitrary and capricious. The Committee's interpretation of the Plan's terms to require that Combs be awarded SSDI benefits because of a mine accident was reasonable.

**B. Rule 59(e) Motion**

**1. Standard of Review**

We review *de novo* the denial of a Rule 59(e) motion seeking reconsideration of a judgment rendered in an ERISA action. *See GenCorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 833 (6th Cir. 1999) ("[A]s a general matter, the appeal from the denial of a Rule 59(e) motion is treated as an appeal from the underlying judgment itself."); *Wilkins*, 150 F.3d at 613 (applying *de novo* standard to review the denial of a Rule 59(e) motion in an ERISA case).

**2. Analysis**

A motion to alter or amend judgment may be granted to account for newly discovered evidence. *GenCorp, Inc.*, 178 F.3d at 834. On appeal, Combs asserts that the Questions and Answers ("Q & As") to the United Mine Workers of America 1974 Pension Plan ("UMWA Pension Plan"), of which he became aware after the judgment was entered, constitute newly discovered evidence. According to Combs, the UMWA Pension Plan contains provisions identical to the provisions at issue

here, and under the Q & As and case law construing the UMWA Pension Plan's provisions, he is entitled to disability retirement benefits under the Plan.

Combs's argument fails for two reasons. First, in an ERISA action, the court may consider only the evidence contained in the administrative record and may not consider any evidence not presented to the plan administrator. *Wilkins,* 150 F.3d at 619. Because the UMWA Pension Plan and the Q & As construing that plan were not part of the administrative record before the Committee, neither the district court nor this court can consider those documents. Second, the UMWA Pension Plan and the Q & As do not constitute newly discovered evidence. Rather, this is a new argument—that he is entitled to benefits based on interpretations of the UMWA Pension Plan—that could have been raised before the district court's judgment. *See Sault Ste. Marie Tribe of Chippewa Indians v. Engler,* 146 F.3d 367, 374 (6th Cir.1998) (holding that a Rule 59(e) motion is not an opportunity to reargue a case and should not be used "to raise arguments which could, and should, have been made before judgment issued").

AFFIRMED.