**Alexander N. SMITH, by his parents Kenneth W. SMITH and Janet S. Smith, Plaintiffs,**

v.

**MOUNT PLEASANT PUBLIC SCHOOLS, Defendant.**

No. 01–10312–BC.

United States District Court, E.D. Michigan, Northern Division.

Dec. 23, 2003.

Richard J. Landau, Bradley L. Smith, Dykema Gossett, Ann Arbor, MI, Kary L. Moss, Michael J. Steinberg, Detroit, MI, Thomas C. Bromell, Mt. Pleasant, MI, for Plaintiff.

Daniel S. Opperman, William J. Ewald, Braun, Kendrick, Saginaw, MI, for Defendant.

*OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION*

LAWSON, District Judge.

The plaintiff, Alexander Smith, has filed a motion asking this Court to reconsider a

portion of its September 30, 2003 opinion and order in which the Court held unconstitutional Michigan's so-called verbal assault statute, Mich. Comp. Laws § 380.1311a(2), and the defendant's policies and rules enacted pursuant thereto. Despite the statute's unconstitutionality, however, the Court determined that the defendant did not violate the plaintiff's First Amendment rights when it suspended him for publicly insulting the principal and vice-principal, and spreading rumors about their personal and private matters. The Court found that Smith's public comments were disruptive of the school's operation and impinged on the rights of other students, and they also constituted lewd and vulgar speech. It is this aspect of the opinion that Smith asks the Court to reconsider. Smith says that sustaining the suspension on grounds other than the verbal assault policy denies him due process of law. He also argues that the Court's finding that the plaintiff's speech was disruptive overlooks the temporal and qualitative boundaries established by the Supreme Court and the Sixth Circuit in defining substantial disruption. Neither of these arguments has merit, and the plaintiff's motion for reconsideration will be denied.

## I.

The Court will grant a motion for reconsideration if the moving party shows: (1) a "palpable defect," (2) that misled the Court and the parties, and (3) that correcting the defect will result in a different disposition of the case. E.D. Mich. LR 7.1(g)(3). A "palpable defect" is a defect which is obvious, clear, unmistakable, manifest, or plain. *Fleck v. Titan Tire Corp.*, 177 F.Supp.2d 605, 624 (E.D.Mich.2001). Furthermore, the Local Rules provide that any "motion for rehearing or reconsideration which merely present the same issues ruled upon by the Court, either expressly or by rea-

sonable implication, shall not be granted." E.D. Mich. LR 7.1(g)(3).

The plaintiff's argument challenging the conclusion that his speech was disruptive, interfered with discipline, and impinged on the rights of other students was previously presented by the parties and addressed by the Court. The Court finds no "palpable defect" in its reasoning or conclusions, and the plaintiff has offered nothing new or illuminating as to this aspect of the case. The portion of the motion asserting this ground for reconsideration amounts to little more than recycling the remnants from Smith's earlier offerings. However, a motion for reconsideration is not properly used as a vehicle to rehash old arguments or to advance positions that could have been argued earlier but were not. *See Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir.1998) (construing Federal Rule of Civil Procedure 59(e)).

## II.

The plaintiff's due process argument, although touched upon during oral argument, was not fully briefed or presented to the Court earlier. Smith claims that he was not put on notice that he was accused of using vulgar or disrespectful speech toward school administrators, and therefore he had no opportunity to defend against such a charge. He argues that if the school district had charged him with inappropriate speech under the "obscenity" or "profanity/vulgarity" provisions of the Student Code of Conduct, Smith would have been on notice that his speech was considered "lewd" and/or "vulgar," as the Court stated in its opinion, and would have challenged the school's district charge by raising numerous defenses. The essence of the plaintiff's argument is that the notice of the charge was inadequate, and it violat-

ed the Due Process Clause as it has been held to apply in the public school context. *See Goss v. Lopez,* 419 U.S. 565, 581, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (holding that students have a property interest in a public education and that the Fourteenth Amendment requires a school to give a student notice of the charges against him and an opportunity to be heard on those charges).

It is true that a school district is "constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause." *Goss,* 419 U.S. at 574, 95 S.Ct. · 729. However, the plaintiff here misapprehends the nature and extent of the process that is due him under the Constitution in the school setting. *Goss* did not mandate the compilation of a student code of conduct, written notice of charges, a trial, confrontation of witnesses, or prescribe a burden of proof. All that the *Goss* court required was "some kind of notice" and "some kind of hearing." *Id.* at 579, 95 S.Ct. 729. In fact, the Court stated that due process for a student challenging disciplinary suspension requires only that the teacher "informally discuss the alleged misconduct with the student minutes after it has occurred." *Id.* at 581–82, 95 S.Ct. 729.

The *Goss* Court's rationale was that school administrators may not act arbitrarily in imposing short suspensions, such as the one involved in this case, and that care should be taken to avoid mistakenly punishing an innocent student. *See id.* at 579, 95 S.Ct. 729 (observing that "[t]he student's interest is to avoid unfair or mistaken exclusion from the educational process, with all of its unfortunate consequences"). Thus, "requiring effective no-

tice and informal hearing permitting the student to give his version of the events will provide a meaningful hedge against erroneous action." *Id.* at 583, 95 S.Ct. 729. However, the Court did not diminish the universally accepted notion that due process is, of necessity, a flexible concept that must be applied in a practical manner.

The Supreme Court later stated that school administrators are afforded a level of flexibility under the Constitution that allows "a degree of supervision and control [over students] that could not be exercised over free adults." *Vernonia School Dist. 47J v. Acton,* 515 U.S. 646, 655, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995). Thus, it has been held that "a proper educational environment requires close supervision of school children, as well as the enforcement of rules against conduct that would be perfectly permissible if undertaken by an adult." *New Jersey v. T.L.O.,* 469 U.S. 325, 339, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). The Supreme Court has "acknowledged that for many purposes school authorities act *in loco parentis,* with the power and indeed the duty to inculcate the habits and manners of civility. Thus, while children assuredly do not shed their constitutional rights at the schoolhouse gate, the nature of those rights is what is appropriate for children in school." *Vernonia School Dist.,* 515 U.S. at 656, 115 S.Ct. 2386 (quoting *Bethel School Dist. No. 403 v. Fraser,* 478 U.S. 675, 684, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986)) (internal quotes and citations omitted).

The Sixth Circuit has observed that the sort of notice appropriate to school children is information that offensive speech may result in discipline. *See Poling v. Murphy,* 872 F.2d 757 (6th Cir.1989). In that case, the plaintiff was disciplined for giving a speech as a candidate for his student council presidency in which he

made fun of the vice-principal's speech impediment. Poling's speech was previewed by a faculty member, who told him to remove a reference to the school administration's "iron grip" over the school, since it was important for the student council president to work cooperatively with the administration. The previewed speech did not contain a reference to the vice-principal's stuttering problem. After the plaintiff gave his speech, he was disqualified from the election for comments that were "discourteous" and "rude," and he challenged that sanction in federal court. Addressing the plaintiff's due process argument, the court stated that the plaintiff "was put on notice before he gave his speech that it was considered important for the president of the student council 'to work in a cooperative way with the Administration.' ... [The plaintiff] was far too intelligent, as the district court recognized, to suppose that a reference to 'the iron grip of this school' would be made more palatable to the administration by the introduction of a discourteous reference to the assistant principal and his 'stutter.' The district court found that 'it could not have been a surprise to [Dean] Poling that he received some discipline.' There was no showing to the contrary." *Id.* at 764. The court upheld the discipline against the plaintiff's due process and First Amendment challenges.

In this case, the plaintiff was given notice that his commentary offended the principal. In fact, the plaintiff met with the principal on the same day he read his statement in the school cafeteria, and the principal took personal offense at the plaintiff's remarks about her. The plaintiff was given a "discipline referral" form that characterized the comments as a "verbal assault" toward the principal, contended that the words constituted "harassment," and labeled the commentary as "offensive." The plaintiff was given an

opportunity to explain himself and avoid an unfair or mistaken accusation. He was allowed a hearing and an appeal.

■ Whether characterized as a "verbal assault," or "vulgar," or "offensive," or uncivil, or inappropriate for public discourse, the plaintiff's words, to the extent that they amounted to an *ad hominem* attack against the principal and vice-principal, were the proper subject of discipline. "Nothing in the Constitution prohibits the states from insisting that certain modes of expression [in school] are inappropriate and subject to sanctions." *Fraser*, 478 U.S. at 683, 106 S.Ct. 3159. Regardless of whether the defendant invoked a specific section of the Code of Conduct when the plaintiff appealed his suspension, it could not have been a surprise to the plaintiff that his commentary was offensive and might subject him to discipline. Although the school district did not specifically tell the plaintiff that he was being disciplined for violating the "obscenity" provision of the code of conduct, he was given notice that his commentary did violate the school provisions, and he was given an opportunity to be heard on the issue.

It is worth reiterating that the suspension appears to have been a punishment for personally insulting the principal and vice-principal and spreading rumors about their personal and private matters, and was not imposed in retaliation for the plaintiff's views on the tardy policy. "[I]t is a highly appropriate function of public school education to prohibit the use of vulgar and offensive terms in public discourse." *Ibid.* The plaintiff was adequately informed that his words spoken publicly in school were offensive, and he was given an opportunity to be heard on the matter. There was no due process violation here.

### III.

The plaintiff has demonstrated neither a palpable defect in this Court's previous

opinion, nor any reason why there should be a different disposition of this case. Accordingly, it is **ORDERED** that the plaintiffs' motion for reconsideration [dkt # 30] is **DENIED**.