Carl **SCARBROUGH**, As Trustee and Chairman of the Boards of Trustees of United Furniture Workers Pension Fund A and the United Furniture Workers Insurance Fund, on behalf of United Furniture Workers Pension Fund A and the United Furniture Workers Insurance Fund, Plaintiff–Appellant,

v.

Peter **PEREZ**, Defendant–Appellee.

No. 87–5511.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 18, 1988.

Decided March 22, 1989.

Deborah E. Godwin, Gerber, Gerber and Agee, Memphis, Tenn., James F. Gill (argued), Andrew Irving, New York City, for plaintiff-appellant.

William I. Kohn, South Bend, Ind., Ernest J. Szarwark (argued), Lynn C. Tyler, for defendant-appellee.

Before NELSON and NORRIS, Circuit Judges, and MARKEY, Chief Judge.*

DAVID A. NELSON, Circuit Judge.

This is an appeal from a summary judgment entered in favor of an individual defendant in an action brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, as amended by the Multi–Employer Pension Plan Amendments Act of 1980. The main question presented is whether the statutory language made the chief executive officer and indirect owner of a closely held corporation answerable personally for the corporation's delinquent contributions to two employee welfare benefit plans and for the liability incurred by the corporation upon its withdrawal from one of the plans, a multi-employer pension plan. We agree with the district court, 683 F.Supp. 659, that ERISA did not make the individual defendant personally liable for the obligations of his corporation.

I

Defendant Peter Perez was the sole owner of Perez, Inc., an Indiana corporation. In February of 1983 Perez, Inc. purchased all of the outstanding stock of Aeolian Pianos, Inc., a New York corporation. Aeolian had a book value of about $6.5 million,

---

* The Honorable Howard T. Markey, Chief Judge, United States Court of Appeals for the Federal Circuit, sitting by designation.

and the purchase price was $3 million. Mr. Perez, who became the chief executive officer of Aeolian, personally guaranteed repayment of advances of working capital funds made to Aeolian by Citicorp Industrial Credit Corporation under a $10 million line of credit.

Aeolian, which manufactured pianos and piano parts at a factory in Tennessee, was obligated under a collective bargaining agreement to make monthly payments to the trustees of a multi-employer health insurance plan and a multi-employer pension plan. The required payments were made through 1984, but Aeolian experienced increasing difficulty in competing successfully with Asian piano manufacturers at a time when demand for pianos was falling; early in 1985 Aeolian became unable to meet all of its obligations as they became due, and the corporation failed to make the required contributions to the health insurance and pension plans for February and March of 1985. Citicorp foreclosed its security interest in Aeolian's assets, and Aeolian laid off all its employees, ceased its manufacturing operations, and went into bankruptcy. The shutdown of the business resulted in Aeolian's incurring a "withdrawal liability" to the pension plan under 29 U.S.C. § 1381.

The trustee of the plans brought the present action in federal court pursuant to 29 U.S.C. § 1132, naming as defendants Perez, Inc. and Peter Perez individually. The complaint asserted claims against both defendants for Aeolian's delinquent contributions (the exact amount of which remained to be determined) and for withdrawal liability in the amount of $204,281.00. The complaint alleged, among other things, that Perez, Inc. and Aeolian constituted a "single employer" under 29 U.S.C. § 1301(b)(1), and that Peter Perez was an "employer" under 29 U.S.C. § 1002(5). An amended complaint also alleged that Mr. Perez was personally liable for the obligations of Perez, Inc. because that corporation was his "alter ego or instrumentality."

Perez, Inc. never responded to the complaint. Mr. Perez did respond, filing both an answer and a motion for summary judgment. In due course the district court (Julia Smith Gibbons, J.) entered an order granting the motion for summary judgment. The court held that the statutory provisions on which the plaintiff relied did not make Mr. Perez individually responsible for either the delinquent contributions or the § 1381 withdrawal liability. The court held further that because the plaintiff had failed to allege use of the corporate form to commit some wrong or fraud, Mr. Perez could not be held personally liable on an "alter ego" or "mere instrumentality" theory:

> "The only wrong alleged by plaintiff is the failure of Aeolian to pay into the insurance and pension funds, and its withdrawal from the pension fund. This is simply not the type of fraud or injustice which would require that the corporate veil be pierced. As defendant Peter Perez points out, the corporate veil cannot be pierced to satisfy every disappointed creditor. If this were done, a central purpose of incorporation—protecting officers and shareholders from personal liability—would be frustrated. Absent any allegation of wrongdoing on the part of Mr. Perez, the court declines to disregard the corporate form in the present case."

In a separate judgment entry under Rule 54(b), Fed.R.Civ.P., the court made an express determination that there was no just reason for delaying final judgment as to Mr. Perez, notwithstanding the pendency of the claim against Perez, Inc. The court expressly directed that "final judgment be entered for Peter Perez against the plaintiff." The plaintiff thereafter took a default judgment against Perez, Inc., and the case was referred to a magistrate for determination of damages. While the matter was in that posture the plaintiff filed a notice of appeal as to the judgment in favor of Mr. Perez.

## II

■ Under 28 U.S.C. § 1291, the finality of the judgment appealed from is a jurisdictional prerequisite that this court must con-

sider even though the issue has not been raised by a party. *Knafel v. Pepsi Cola Bottlers of Akron, Inc.,* 850 F.2d 1155 (6th Cir.1988). The district court did not set forth its rationale for determining that there was no just reason for delay and for directing the entry of an immediately appealable judgment as to only one of the two defendants, and in such a situation the district court's determination is entitled to no deference here. *Knafel,* 850 F.2d at 1159; *COMPACT v. Metropolitan Government of Nashville & Davidson County,* 786 F.2d 227, 231 (6th Cir.1986); *Solomon v. Aetna Life Insurance Co.,* 782 F.2d 58, 62 (6th Cir.1986); *Corrosioneering, Inc. v. Thyssen Environmental Systems, Inc.,* 807 F.2d 1279, 1282–83 (6th Cir.1986).

Unless we were prepared to make an independent search of the record to see whether circumstances existed that might justify the district court's action under Rule 54(b), we should ordinarily dismiss the appeal out of hand in a case such as this. The rule against piecemeal appeals would seem, on the face of things, to counsel against entertaining an appeal before determination of the dollar amount of the corporation's liability. At oral argument, however, counsel for the plaintiff abandoned the claim against Perez, Inc. The judgment for Mr. Perez is thus a complete and final disposition of the lawsuit, as a practical matter, and we shall therefore accept the determination made by the district court under Rule 54(b) and proceed to a consideration of the merits of the appeal.

### III

■ Under the caption "Delinquent contributions," 29 U.S.C. § 1145 provides as follows:

"Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

For purposes of the subchapter of which § 1145 is a part, the term "employer" is defined thus:

"The term 'employer' means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5).

The term "person," as used in § 1002(5), "means an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9). (The failure to include "corporate officer" in this listing has sometimes been considered significant. See *Solomon v. Klein,* 770 F.2d 352, 354 (3d Cir.1985).)

Aeolian Pianos, Inc. was unquestionably an employer obligated to make contributions to multi-employer plans within the meaning of 29 U.S.C. § 1145. The plaintiff trustee maintains that Peter Perez had a corresponding obligation because, as an individual acting indirectly in the interest of Aeolian in relation to the plans, he was subject to § 1145 as a matter of law. The plaintiff finds support for this conclusion in several district court decisions, and he urges that the imposition of personal liability on an individual with the interest and control possessed by Mr. Perez would be consistent with such appellate decisions as *Donovan v. Agnew,* 712 F.2d 1509 (1st Cir.1983), and *Donovan v. Grim Hotel Co.,* 747 F.2d 966 (5th Cir.1984), *cert. denied,* 471 U.S. 1124, 105 S.Ct. 2654, 86 L.Ed.2d 272 (1985). There the definition of "employer" in the Fair Labor Standards Act ("any person acting directly or indirectly in the interest of an employer in relation to an employee," with "person" meaning "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons," 29 U.S.C. § 203), was held to make corporate officers personally liable for the corporation's statutory wage obligations.

The argument that ERISA ought to be given the same sort of broad interpretation

as the Fair Labor Standards Act was rejected by the United States Court of Appeals for the District of Columbia Circuit in *International Brotherhood of Painters v. George A. Kracher, Inc.*, 856 F.2d 1546 (D.C.Cir.1988). Stating that "there is no indication that Congress intended to incorporate FLSA case-law into ERISA's definition of 'employer,'" the *George A. Kracher* court pointed out that when ERISA was enacted in 1974, it created no statutory cause of action in respect of delinquencies. When such a cause of action was created by the enactment of 29 U.S.C. § 1145 in the Multi–Employer Pension Plan Amendments Act of 1980, the 1974 definition of "employer" was left untouched—and "[i]t is impossible to read into a definition of 'employer' adopted in 1974 any congressional purpose to specify essential elements of a statutory right of action for recovery of unpaid contributions that did not exist until 1980." *Id.* at 1549.

Moreover, the court pointed out in *George A. Kracher*, ERISA does not require employers to provide pension plans for their employees, whereas the Fair Labor Standards Act does require employers to pay their employees specified wages. The difference is a "fundamental" one, the court said, and in the "complete absence of evidence that Congress had in mind the interpretation urged upon us," the distinction "constrains us to reject the notion that FLSA caselaw should be assigned a role in the context of Title I of ERISA." *Id.*

Section 1145 was added to ERISA "to simplify litigation over unpaid contributions," according to *George A. Kracher*, "not to expand the universe of potential defendants." *Id.* To treat the dominant shareholder and chief officer of a corporate employer as a person acting "indirectly in the interest of [the] employer," so as to make him an employer himself under 29 U.S.C. § 1002(5), would be "foolhardy," the court said.

> "Such an expansive reading would mean that every employee or other agent who discharges some responsibility in regard to a corporation's employee benefit plan would be swept within the definition and thereby become an 'employer' subject to

liability for delinquent contributions. Obviously Congress did not contemplate that." *Id.* at 1548 (footnote omitted).

In *Massachusetts Laborers' Health and Welfare Fund v. Starrett Paving Corp.*, 845 F.2d 23 (1st Cir.1988), the Court of Appeals for the First Circuit—the same court that decided the Fair Labor Standards Act case of *Donovan v. Agnew, supra*—reached the same result as that reached in the *George A. Kracher* case, but by a somewhat different route. In *Starrett Paving* the district court had entered judgment in favor of a group of multi-employer pension plans against the president and sole shareholder of a corporate employer that had gone bankrupt at a point when it was in arrears on its contributions to the plans. The First Circuit reversed the judgment on appeal, holding that even if an individual owner-officer were an "employer" for purposes of § 1145 (an issue the court did not "definitively decide"), the individual could not be held liable under that section because the statute applies only to an employer who is "obligated to make contributions" to a multi-employer plan—and the individual defendant had never assumed any such obligation himself. In the case at bar, similarly, there has been no showing that Peter Perez ever personally assumed any obligation to make contributions to the plans on behalf of Aeolian Pianos, Inc.

The results in the *Starrett Paving* and *George A. Kracher* cases are consistent with those in *Operating Engineers Pension Trust v. Reed*, 726 F.2d 513 (9th Cir. 1984), and *Solomon v. Klein, supra*, 770 F.2d 352. Both of the latter cases teach that where a court is without justification for piercing the veil separating a corporate employer from its owner-chief executive, the owner-executive may not be held personally answerable for the corporation's delinquent contributions. We are aware of no court of appeals decision to the contrary, and we are unwilling to create a split among the circuits on this issue.

We emphasize that the case at bar, like *Starrett Paving*, "is not a corporate-veil

piercing case." 845 F.2d at 24. Neither the original complaint nor the amended complaint filed by the trustee in this case alleged that Aeolian Pianos, Inc. was the mere instrumentality or alter ego of Mr. Perez, or that Aeolian Pianos' separate existence ought to be disregarded. The amended complaint did advocate piercing the corporate veil of Perez, Inc., but the claim against that corporation has now been abandoned. As the district court held, moreover, the corporate veil may not be pierced without a showing of fraud or injustice separate and apart from the corporation's failure to pay its debt—and no such showing was made here. Plaintiff's counsel as much as conceded this point in oral argument, and properly so; "[l]imited liability is a hallmark of corporate law," as the *George A. Kracher* court observed, 856 F.2d at 1550, and owner-operators of closely held corporations do not subject themselves to personal liability for the corporations' obligations merely by participating actively in the running of the business. (We find nothing to the contrary in our per curiam opinion in *Laborers Fringe Benefit Funds v. Northwest Concrete & Construction, Inc.*, 640 F.2d 1350 (6th Cir.1981), where the "sole question" presented was "whether or not a fiduciary of an employee benefit plan can bring an action under ERISA to *enjoin* a recalcitrant employer from failing to comply with the benefit plan provisions of a labor agreement." 640 F.2d at 351–52 (emphasis supplied).)

## IV

⬛ The reasoning outlined above is also dispositive of the plaintiff's claim that Mr. Perez ought to be held answerable for his company's multi-employer pension plan withdrawal liability under 29 U.S.C. § 1381. Nothing in either the language or purpose of the 1980 amendments by which this section was added can justify the compromise that the plaintiff would have us make in the corporate principle of limited liability. *Conners v. P & M Coal Co.*, 801 F.2d 1373, 1376 (D.C.Cir.1986). As the court of appeals went on to say in that case, "[a]cceptance of the ... 'interest and control' test [for making owner-officers answerable for

corporate withdrawal liability] would not only subvert the major purpose of incorporation, but would discourage future participation in multiemployer pension plans—a result that is clearly contrary to one of MPAA's stated objectives." *Id.* at 1376. The same point was made in *DeBreceni v. Graf Brothers Leasing, Inc.*, 828 F.2d 877, 881 (1st Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1024, 98 L.Ed.2d 988 (1988), where the First Circuit noted that "personal liability would discourage controlling shareholders and officers from directing their corporations to contribute to multiemployer pension plans...."

The conclusion reached in *Conners v. P & M Coal Co.*, and *DeBreceni v. Graf Brothers* is strengthened by the circumstance that the statutory definition of "employer" in 29 U.S.C. § 1002(5) was adopted for purposes of Subchapter I of Chapter 18 of Title 29. All of the subsections of § 1002 are prefaced by the words "[f]or purposes of this subchapter," referring to Subchapter I. Section 1381, which imposes liability on an employer that withdraws from a multi-employer plan, is contained not in Subsection I, but Subsection IV—and Subsection IV contains no definition of "employer" at all. The Supreme Court has recognized that Subchapter I definitions are not necessarily applicable to other subchapters, *Nachman Corp. v. Pension Benefit Guarantee Corp.*, 446 U.S. 359, 370–71, 100 S.Ct. 1723, 1731, 64 L.Ed.2d 354 (1980), and in the absence of a clear directive from Congress, we have no warrant to say that a corporate employer which withdraws from a multi-employer plan is to be treated, for withdrawal liability purposes, as indistinguishable from the individual or individuals behind the corporation. When Congress wants us to disregard the fact of incorporation, it knows how to say so. See, for example, 29 U.S.C. § 1301(b)(1), dealing with the Pension Benefit Guarantee Corporation's plan termination insurance: "For purposes of this subchapter [Subchapter III] ... all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a sin-

gle employer and all such trades and businesses as a single employer."

Finally, as the District of Columbia Circuit has noted, 29 U.S.C. § 1405(c) makes certain property of a sole proprietor or individual partner unavailable to satisfy withdrawal liability claims in the event of bankruptcy—and it would be anomalous to suppose that while Congress has capped the withdrawal liability of individual proprietors and partners, "Congress intended at the same time to impose an absolute liability on owner-officers, even to the extent of stripping them of the meager protections afforded by bankruptcy laws." *Conners v. P & M Coal Co.*, 801 F.2d at 1378.

The judgment of the district court is AFFIRMED.