**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0096n.06
Filed: February 5, 2009

**Nos. 07-4180, 07-4251**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

G.G. MARCK AND ASSOCIATES, INC., )
)
Plaintiff-Appellee Cross-Appellant )
)  ON APPEAL FROM THE
v. )  UNITED STATES DISTRICT
)  COURT FOR THE NORTHERN
JAMES PENG; PHOTO U.S.A. CORPORATION; )  DISTRICT OF OHIO
NORTH AMERICAN INVESTMENTS CORP.; )
PHOTO USA ELECTRONIC GRAPHIC INC., )
)
Defendants-Appellants Cross-Appellees )
)
——————————————————————— )
)

**BEFORE: ROGERS, SUTTON, and McKEAGUE, Circuit Judges.**

**ROGERS, Circuit Judge.** A "sublimation mug" is a blank mug onto which images can be transferred. G.G. Marck makes and imports sublimation mugs, and competes in the sublimation mug market with companies controlled by James Peng. This appeal stems from a complex suit Marck brought against Peng and three of his companies.

Marck accused Peng and his companies of failing to mark imported mugs as "Made in China," of transporting overweight shipments of mugs, of misstating the transactional value of mugs to U.S. Customs (and thereby underpaying duties), and of importing mugs made by prison labor, all in violation of law. Peng conceded that his companies had violated the law in some instances, and expressed willingness to comply with the law and to settle any viable claims Marck might have. The

parties reached a settlement, and attempted to reduce the settlement to writing. After several proceedings and the signing of a stipulated permanent injunction, Marck moved to reopen the case and proceed as if no settlement had occurred. The district court allowed Marck to do so, though it left the stipulated injunction in place. The court eventually granted Marck partial summary judgment as to liability, and after five days of hearings awarded Marck damages of $1,150,000 on the original claims as well as damages equal to Marck's attorney fees for the entire case as a sanction for the Peng defendants' alleged violations of the permanent injunction. Peng and his companies now appeal from this non-jury judgment; Marck cross-appeals, claiming that the trial court abused its discretion by not awarding Marck over thirteen million dollars.

Because the district court did not make clear the legal basis on which it reopened a settled case while leaving intact a permanent injunction that was part of the settlement, we vacate the judgment below. We also vacate the award of damages for contempt as insufficiently supported.

## I. Background

Marck originally filed suit in Ohio court in September 2005, alleging claims of unfair competition, civil conspiracy, deceptive trade practices, trademark infringement, and tortious interference with business relations. Peng and his companies removed to federal court. In October 2005, the district court held a hearing on whether it should issue a temporary restraining order against the Peng companies. Midway through the second day of the hearing, the parties reached an agreement to settle the entire case and placed it on the record.

Both sides' attorneys participated in putting the various terms of the settlement on the record: a "voluntary [permanent] injunction will be agreed to by the defendants," the parties "agreed to a three-year monitoring program through an accounting or CPA firm" with costs shared, under the injunction Peng would "agree to comply with the United States laws with [regard] to Customs importation and transportation," the parties "agreed to mutual full and complete releases between the parties and additionally Anna Peng" (the wife of defendant Peng), the case would be dismissed with prejudice, and the district court would "retain jurisdiction to enforce the terms and conditions of the injunction until its dissolution."

The next day, the district court entered an order noting that the case had settled and dismissing it without prejudice. The court noted that the order could be superseded by a later order, and that the court retained jurisdiction both to interpret and enforce the settlement agreement and to vacate the order and reopen the case "upon cause shown that the settlement has not been completed and further litigation is necessary."

About a month later, Marck filed a motion to enforce the settlement agreement. Marck alleged that Peng refused to complete the settlement, and asked the district court to enforce the agreement entered into at the October hearing. Peng did not file a response opposing this motion, possibly because he was busy changing attorneys.

The district court held a hearing on the motion to enforce in December 2005. Late in the proceedings, after an off-the-record discussion, Marck's attorney made the first on-the-record suggestion that the court enter a stipulated permanent injunction, but defer resolution of any

"settlement agreement and mutual release" for a later hearing. The court indicated that it agreed with this proposal, or at least that it wanted immediate resolution of the injunction issue and that it would put off issues relating to a separate release. Peng agreed to sign the stipulated injunction, and the court indicated that it would set a further hearing on the separate release. The court further indicated that it hoped the parties would reach agreement on the release before another hearing was necessary.

The district court entered the Stipulated Permanent Injunction, signed by the parties, on December 8, 2005. In the "Findings" section, the injunction provided that "[t]o effect settlement of the matters alleged in the Verified Complaint without a trial on the merits or any further judicial proceedings, Defendants agree and consent to the entry of this Stipulated Final Order for Permanent Injunction." It further stated that "Defendants agree to accurately designate the country of origin on its [sic] products and/or packaging imported into the United States." Under the "Prohibited Business Activities" section, the order enjoined Peng from "[s]ubmitting falsified or inaccurate documentation to U.S. Customs," and from "[s]hipping products" in the U.S. in excess of legal weight limits. The injunction also provided for monitoring by a mutually acceptable third party. Marck had provided the first draft of the injunction, and most of its language remains in the final draft.

In January 2006, Marck filed a motion to reopen the case. Marck alleged that Peng was "unwilling to execute the Settlement Agreement with Mrs. Peng as a signatory." The next day the district court entered an order granting that motion, as well as an unrelated discovery motion. This order is rather unclear. Most of the order dealt with the discovery motion, but in passing the court stated that "Plaintiff has filed a motion to reopen . . . and requested a hearing on the motion to

enforce, which will be granted." The court later characterized the order as granting the motion to reopen. Peng now appeals this order and all orders based on the district court's reopening of the case.

After the district court reopened the case, Marck filed a motion for partial summary judgment "on its claims of deceptive trade practices, unfair competition and civil conspiracy." The motion did not explain what Marck wanted the court to do with its claims for trademark infringement or tortious interference. The district court granted partial summary judgment in November 2006.

The district court's order stated findings that: (1) Peng violated O.R.C. § 4615.02 by not labeling his products "Made in China," (2) Peng violated 15 U.S.C. § 1125(a)(1)(A) by not labeling his products "Made in China," and (3) Peng committed civil conspiracy in violation of Ohio common law by not labeling the country of origin, by shipping overweight containers, and by misdeclaring the value of imports to U.S. Customs.

The district court held a nonjury "hearing/trial" on damages for five days in March and April of 2007. The court awarded Marck $1,150,000 in damages for the claims on which it had found against Peng during the summary judgment phase. As a sanction for violations of the stipulated permanent injunction, the district court ordered Peng "to pay the Plaintiff's legal fees." The court found that as of the damages hearing, the fees were $340,786; a motion for an additional $215,530.44 is still pending in the district court. The court characterized the award as "curative sanctions of the Court for willful violation of a Court order."

However, the district court did not make specific findings of facts and conclusions of law with respect to the sanctions. The court merely stated that "[t]he evidence presented by Plaintiff clearly demonstrates that Defendants willfully violated the terms of the Permanent Injunction. The Court will impose sanctions as a cure [therefor]."

Peng now appeals. Marck cross-appeals, claiming its award should be over thirteen million dollars.

## II. Jurisdiction

This court has jurisdiction over this appeal notwithstanding the fact that the district court's order appears to have resolved only three of the five claims that Marck brought against Peng. As late as the period between the entry of summary judgment and the damages hearing, the claims for trademark infringement and tortious interference appeared to be still under consideration (Peng's counsel, noting that previous counsel had never actually filed an answer to the complaint, sought and received permission to file a belated answer in which Peng addressed the trademark and tortious interference claims).

While it is not clear whether the district court intended to dispose of all the issues in this case, we have jurisdiction in any event because Marck has made clear on appeal that it has abandoned the remaining claims. At oral argument, Marck's counsel stated his belief that he had withdrawn the trademark and tortious interference claims below. Both parties claim in their supplemental briefs that Marck clearly abandoned these claims below, although Marck does not point to anything in the record showing that it explicitly abandoned those claims. Peng notes that in Marck's Damages

Hearing Brief below, Marck stated that "the only remaining proceedings in this case relate to . . .

damages" for the claims on which the district court had entered summary judgment.

Appellate jurisdiction in these circumstances is supported by *Scarbrough v. Perez*, 870 F.2d

1079 (6th Cir. 1989). The plaintiff in that case brought claims against a corporation and an

individual. The individual answered and moved for summary judgment; the corporation defaulted.

The district court granted summary judgment for the individual and separately found under Rule

54(b) that no just reason existed to delay that final judgment. Relying on the 54(b) finding, the

plaintiff appealed as to the individual, though the claim against the corporation remained in the

district court. *Id.* at 1081. However, we gave no deference to the district court's Rule 54(b)

determination because the district court had not provided its rationale. While we noted that normally

we would dismiss an appeal in such circumstances, we heard the case because at oral argument

plaintiff's counsel explicitly abandoned the claim against the corporation that remained in the district

court. *Id.* at 1082. This action converted the judgment for the individual into a final order regardless

of whether Rule 54(b) properly applied.

Marck's statement at oral argument, together with its statement in its supplemental brief that

it abandons these claims, act as an abandonment of the trademark and tortious interference claims.

With those claims out of the picture, the district court's order below is a final order, and we have

appellate jurisdiction. We note, however, that this method of disposing of claims is hardly ideal, and

we encourage litigants (and district courts) to make explicit the dismissal of claims that parties elect

not to pursue.

### III. Settlement and Reopening

The district court awarded Marck summary judgment and further awarded over a million dollars in damages to Marck. Whether or not the legal reasoning underlying these rulings was correct, however, the district court's earlier handling of the motion to reopen requires vacating these rulings.

The parties agreed, in October 2005, that they had reached a settlement, and they placed various terms of that settlement on the record. *See Re/Max Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001) ("When parties have agreed on the essential terms of a settlement, and all that remains is to memorialize the agreement in writing, the parties are bound by the terms of the oral agreement."). In November Marck moved to enforce this settlement. In December both sides signed a stipulated injunction that purported to settle the case. In January, rather inexplicably, and without giving Peng time to respond to Marck's motion, the district court ordered the case reopened but left the stipulated injunction intact. Because we do not ascertain a proper legal basis on which the district court could rest its actions, we vacate and remand.

The situation facing the district court in January 2006 can be thought of in different ways. The broad settlement agreement contained various terms, of which the two most important (for present purposes) were that the parties and Ms. Peng would sign a mutual release and that the parties would sign a stipulated injunction. If these two terms were separate parts of the settlement, then the fact that no one signed a separate release would imply that one of the parties had breached the

settlement agreement and thus call into question whether the stipulated injunction should continue in force. On the other hand, the stipulated injunction by its terms appears to obviate the need for a separate release. From this, one can infer that the settlement succeeded in that the stipulated injunction resolved all claims between the parties, and the only thing left for the court to do was to enforce the injunction.

Marck proposes a novel third interpretation of the record—that the stipulated permanent injunction was not part of the settlement at all, but rather represents a preliminary injunction that the district court would have entered had Peng refused to sign it, and that the stipulated injunction must therefore be given force independent of the settlement. This theory does not warrant much analysis, because Marck has not presented record evidence supporting this interpretation of events, and we will not rely on Marck's speculations as to what the district court might have done had Marck requested a different form of relief. Marck's theory of the case, under which it reaps all the benefits of the stipulated injunction but pays no price for it, cannot be correct.

Rather, either (1) the parties fully complied with the settlement agreement by virtue of the stipulated permanent injunction, in which case the court should have enforced the settlement as entirely encompassed by the stipulated injunction, or (2) one of the parties breached the settlement agreement, in which case the court should have either enforced the settlement agreement (i.e., by requiring the relevant party to sign the release), or, if the settlement proved to be unenforceable, vacated the stipulated permanent injunction (as part of a now-unenforceable settlement). Below, Peng appeared to believe that the entry of the injunction had completed the settlement

agreement—he argued to that effect in his first filing on the issue after Marck moved to reopen the case.[1]

Indeed, the stipulated injunction appears on its face to have resolved the entire case. The stipulated permanent injunction is a form of consent judgment, and the "interpretation of a consent decree or judgment is a question of contractual interpretation." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 372 (6th Cir. 1998) (citation omitted). A consent judgment is treated as a contract formed and interpreted under the law of the state in which it was formed. *Id.* (citation omitted).

The most straightforward reading of the stipulated injunction is that it forecloses further litigation. The injunction states that Marck "filed a verified complaint for permanent injunction and other relief," and further states that "[t]o effect settlement of the matters alleged in the Verified Complaint without a trial on the merits or any further judicial proceedings, Defendants agree and

---

[1]Adding to the confusion, the precise reason Marck sought the separate release is far from comprehensible. According to Marck, Ms. Peng's refusal to sign that separate mutual release caused the entire settlement to fail. But Marck does not explain why this term was so important, other than noting that the district court would likely not otherwise have in personam jurisdiction over Ms. Peng. But if Marck cannot otherwise obtain in personam jurisdiction over Ms. Peng, it appears unlikely that she has harmed Marck in such a way that it has any claims against her to surrender, nor has Marck explained what claims it fears that she may have against it. Why her signature should be required on a separate mutual release of claims is thus a mystery, and makes it difficult to see why an entire settlement should fail merely because of its lack. After all, by the terms of the stipulated injunction, she must abide by the injunction so long as she continues as a corporate officer of any of the Peng companies. To the extent that Marck could be harmed by her actions, therefore, the injunction contemplated binding her as well as every other officer of the Peng companies.

consent to the entry of this Stipulated Final Order for Permanent Injunction." The injunction does not refer to a separate release of claims as necessary to bar further litigation.

The injunction thus may be fairly read as foreclosing the "reopening" of the case as to all matters addressed in the complaint. "The court's task in interpreting a consent decree is to ascertain the intent of the parties at the time of settlement." *National Ecological Foundation v. Alexander*, 496 F.3d 466, 477-78 (6th Cir. 2007) (quotation omitted). However, "the instrument must be construed as it is written," *id.* at 478 (quoting *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971)), and "the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it," *Armour*, 402 U.S. at 682. The language of the stipulated injunction, by clearly stating that it settles matters alleged in Marck's complaint, would thus appear to foreclose further litigation on any issue raised in the complaint.

Marck argues that the district court and parties clearly contemplated the execution of a separate release before they signed the injunction. But regardless of the subjective intent of the parties at one point in the proceedings, the language of the injunction controls the interpretation of their contract. *See Armour*, 402 U.S. at 682. The stipulated injunction neither refers to a separate release nor implies that it constitutes only a portion of a broader settlement agreement. And because Marck prepared the language in question, it is proper to apply the most natural reading of that language against Marck. Under Ohio law, "where there is doubt or ambiguity in the language of a contract it will be construed strictly against the party who prepared it." *McKay Mach. Co. v. Rodman*, 228 N.E.2d 304, 307 (Ohio 1967).

Nevertheless, the intent of the parties has some bearing on the analysis. Those portions of the proceedings that are on the record demonstrate that both Marck and the district court contemplated a separate release shortly before the signing of the injunction. While this understanding may have changed during one of the many off-the-record portions of the proceedings, it appears that Marck and the district court both may have signed a document that did not reflect their true intentions, though Peng's intent in signing the document is less clear.

Moreover, a district court should hesitate to decline to enforce a working settlement agreement. In a recent case in which one party had shown that the other had violated some provisions of a settlement agreement, we reversed the district court's vacating of the settlement agreement. *Ford Motor Co. v. Mustangs Unlimited, Inc.*, 487 F.3d 465, 470 (6th Cir. 2007). We held that the district court had not found facts sufficient to justify setting aside the settlement, and that such a setting aside normally would require "extraordinary or exceptional circumstances sufficient to warrant Rule 60(b)(6) relief." *Id.* A district court should normally seek to enforce a settlement.

It is thus not clear why the district court did not merely enforce the stipulated injunction as encompassing the entirety of the essential terms of the settlement agreement. However, while we generally review de novo questions of law regarding the interpretation of consent judgments, we give some deference to a district court's interpretation of a consent decree where that court was involved in creating the decree. *See Sault Ste. Marie*, 146 F.3d at 371; *see also Brown v. Neeb*, 644 F.2d 551, 558 n.12 (6th Cir. 1981). We therefore leave to the district court in the first instance the

determination whether (1) to enforce the settlement as fully encompassed in the stipulated permanent injunction, or (2) if the additional release is required notwithstanding the stipulated permanent injunction, to require the relevant parties to sign the release. If the release is not obtainable, and the settlement agreement is therefore unenforceable, the case may be reopened pursuant to Rule 60(b), although in doing so the district court must first "expressly determine whether—and, if so, how—[Marck's] evidence establishes extraordinary or exceptional circumstances sufficient to warrant Rule 60(b)(6) relief." *Ford Motor Co.*, 487 F.3d at 470. Moreover, the district court cannot conclude that the settlement agreement is unenforceable without vacating the stipulated permanent injunction, because that injunction was entered pursuant to the settlement agreement.

We vacate the reopening of the case and all judgments dependent on that reopening. On remand, the district court must, after making appropriate findings of fact and conclusions of law, decide whether the settlement agreement is encompassed in the stipulated permanent injunction or if one of the parties has breached a material term of the settlement agreement. If the court concludes that the stipulated permanent injunction settled the case, the court should proceed to enforce that injunction, but deny all relief based on the underlying claims. On the other hand, if the court finds that the stipulated permanent injunction did not resolve the requirement of an additional release, the court should either require compliance with the settlement agreement (the preferred course) or vacate the injunction.

**IV. The Attorney Fee Sanction**

Regardless of whether the stipulated permanent injunction was properly permitted to remain in force, the district court's sanction order must in any event be vacated.

The district court sanctioned Peng for allegedly violating the injunction by ordering him "to pay the Plaintiff's legal fees." It characterized the award as "curative sanctions of the Court for willful violation of a Court order." The district court did not make specific findings of facts and conclusions of law. It stated that "[s]ince the parties have not requested separate findings of fact and conclusions of law," it would issue its opinion after reviewing the lengthy filings. The order does contain statements which can be construed as findings of facts, but not many are directly relevant to the sanctions. The court merely stated that "[t]he evidence presented by Plaintiff clearly demonstrates that Defendants willfully violated the terms of the Permanent Injunction. The Court will impose sanctions as a cure therefore."

The district court should have made specific findings of fact, and Peng may challenge its failure to do so on appeal. "In an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). "A party may later question the sufficiency of the evidence supporting the findings, whether or not the party requested findings, objected to them, moved to amend them, or moved for partial findings." *Id.* 52(a)(5). "Findings of fact . . . must not be set aside unless clearly erroneous." *Id.* 52(a)(6).

The district court should have made findings of fact to aid this court in analyzing the appeal. "The findings are necessary not only to reveal the logic behind the trial court's decision, but also to

enable an appellate court to conduct a meaningful review of the trial court's order." *Zack v. C.I.R.*, 291 F.3d 407, 412 (6th Cir. 2002). "[T]here must be findings, in such detail and exactness as the nature of the case permits, of subsidiary facts on which an ultimate conclusion can rationally be predicated." *Grover Hill Grain Co. v. Baughman-Oster, Inc.*, 728 F.2d 784, 792 (6th Cir. 1984). "The findings should be explicit so as to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the grounds on which the trial court reached its decision." *Id.* at 792-93.

The lack of findings in this case, however, does not foreclose an appellate holding that sanctions were not proper. This court has, in the past, stated that although it could "vacate the judgment of the District Court and remand the case for sufficient findings of fact under Rule 52(a) . . . . in order to avoid further extension of this protracted litigation" it would "dispose of the appeal on its merits despite the insufficiency of the findings of fact." *B.F. Goodrich Co. v. Rubber Latex Products, Inc.*, 400 F.2d 401, 403 (6th Cir. 1968).

The record reflects that the only clear violation of the injunction shown below was that Peng did not give a copy of the court's order to Ms. Peng, as he should have. Some, but not overwhelming, evidence suggests that Peng violated the injunction by misstating transactional values to U.S. Customs. The other evidence Marck cites does not show violations of unambiguous orders in the injunction.

To sustain a finding of contempt, Marck would have had to "prove by clear and convincing evidence that [Peng] violated the court's prior order." *Grace v. Center for Auto Safety*, 72 F.3d

1236, 1241 (6th Cir. 1996) (quotation omitted). The violated order must have been "definite and specific." *Id.* (quotation omitted). "[A]mbiguities must be resolved in favor of persons charged with contempt." *Id.* (quoting *NBA Properties, Inc. v. Gold*, 895 F.2d 30, 32 (1st Cir. 1990) (Breyer, J.)).

Ms. Peng should have been, but was not, provided with a copy of the injunction by December 18, 2005. The injunction required the Peng companies to "deliver copies of the Order" to "all of their principals, officers, directors, and managers" within ten days "of the date of entry of this Order." Anna Peng is an officer of defendant Photo U.S.A. and an officer of defendant North American Investment Corp. On March 23, 2007, Ms. Peng testified that (in the words of the examining attorney) she had "not seen the injunction that was signed in this case." Peng does not address this testimony in either of his briefs. This evidence appears to establish a violation of the injunction.

Peng may have misstated transactional values to U.S. Customs. The injunction enjoined Peng from "[s]ubmitting falsified or inaccurate documentation to U.S. Customs, including but not limited to the 'transactional value' of [his] products." Peng testified that in January 2006 he submitted corrected transactional value figures for imports during the years 2001 to 2005, along with a check for $221,613, to rectify what he characterized as "something we did wrong but not intentionally." Peng further characterized the increased value figures as "giv[ing] the benefit of the doubt to U.S. Customs."

Marck points to its expert's testimony to call Peng's revised figures into doubt. Its expert analyzed various documents relating to the case, including a 2005 tax return that listed a product

valuation. The expert testified that "there's about a 20 cents per piece variance, which it appears as though the inventory . . . is overstated, or the transaction value that he reported at Customs is understated." Peng does not address Marck's characterization of this testimony in his reply brief.

This evidence does not amount to "clear and convincing" evidence that Peng submitted "inaccurate documentation to U.S. Customs." The evidence shows an apparent discrepancy between Peng's tax return valuations and the valuations reported to Customs. The evidence does not directly show that the Customs figures were understated rather than that the tax figures were overstated, though that is certainly a fair inference. However, the expert's testimony establishes that the tax number is in any event not supposed to be identical to the Customs number, and the expert's estimates of the amount of the perceived discrepancy do not clearly explain what misstatements Peng made in submitting the corrected figures. Given Peng's testimony that the numbers he submitted to Customs were calculated in good faith, Marck has not provided sufficient evidence that the numbers submitted to Customs were inaccurate and violative of the injunction.

The other evidence Marck cites does not show a clear violation of an unambiguous directive in the injunction. None of the evidence Marck cites shows that Peng violated his duty to "accurately designate the country of origin on its products and/or packaging imported into the United States." Each product Marck points to was either manufactured (and therefore presumably imported) before the injunction took effect, or had either the packaging or the product marked with "Made in China." For purposes of holding him in contempt, any ambiguity in the "and/or" or the "imported into"

language in the injunction must be resolved in favor of Peng—thus, labeling either the package or the product is sufficient, and the product only need be labeled at the time of import.

Marck's allegations concerning CCIB numbers and concerning use of prison labor do not show any violation of the injunction. The injunction does not constrain Peng with respect to prison labor at all. It also does not refer to CCIB numbers. Marck attempts to characterize a mislabeled CCIB number as a "misrepresentation to Customs," but does not show that Customs uses the CCIB number—CCIB numbers are apparently used by the FDA. Marck does not show how the CCIB label is documentation submitted to Customs within the meaning of the injunction.

The evidence thus shows that Marck has only proved a violation of the permanent injunction insofar as it has shown that Peng did not give a copy of the injunction to Ms. Peng in her capacity as a corporate officer. While some sanction would have been appropriate for this violation, awarding Marck all of its attorney fees for the entire case cannot stand.

The district court characterized the attorney fee sanction as "curative," and as intended "as a cure" for willful violation of the injunction. These statements do not clearly establish whether the court meant the sanction to compensate Marck for expenses caused by past noncompliance ("compensatory") or to encourage future compliance ("coercive"). A court should "provide an adequate explanation of the purpose or purposes" of a chosen sanction or face reversal. *See Ross v. Meyers*, 883 F.2d 486, 490-91 (6th Cir. 1989).

Even if the district court's contempt power extends to having a coercive award designed to encourage Peng's future compliance be payable to Marck rather than to the court itself, the court

provided no justification for why such an award should be measured by Marck's past expenses. The district court's chosen sanction of Peng thus does not fit within the concept of a coercive sanction.

If meant to be compensatory, the sanction was clearly inappropriate. Many of Marck's attorney fees accrued before the injunction even took effect, and the court made no attempt to calculate which fees accruing after the injunction issued were due to Peng's breach.

The award of sanctions must therefore be vacated regardless of how the district court resolves the issue in Part III. The district court may impose sanctions for violations of the stipulated permanent injunction that occurred before its entry of final judgment below only with respect to the failure of Peng to give Ms. Peng, in her capacity as a corporate officer, a copy of the order as it required by its terms. Other relief for violations of the injunction during that period is not warranted on the evidence Marck has presented.

## V. Conclusion

We express no opinion on the propriety of the summary judgment under federal and Ohio law, the propriety of the subsequent damages award, and the merits of Marck's cross-appeal.

We vacate the orders of the district court insofar as they awarded sanctions against Peng, awarded Marck summary judgment and damages, and reopened the case. We remand for further proceedings consistent with this opinion.